UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | Case No. 1:16-cr-0037-BLW |
| v. | **MEMORANDUM DECISION AND ORDER** |
| CHERIE RENEE DILLON, | |
| Defendant. | |

# INTRODUCTION

Following a jury trial, the defendant was convicted of health care fraud and aggravated identity theft. At sentencing, the Court issued a preliminary finding on amounts to be paid as restitution and forfeiture, and scheduled an evidentiary hearing to hear testimony and argument before making a final determination as to those amounts. Following that hearing, the Court ordered further briefing that has now been received. For the reasons set forth below, the Court imposes forfeiture in the sum of $847,016.00, and restitution in the sum of $139,769.80.

# LITIGATION BACKGROUND

Defendant was originally charged with 24 counts of health care fraud and 24 counts of aggravated identity theft. The case went to trial, and after the

**Memorandum Decision & Order – page 1**

Government rested its case, the defendant pled guilty to all counts. The 24 counts of health care fraud that she pled guilty to alleged a scheme from January 1, 2010 through December 31, 2013.

At the conclusion of the sentencing hearing, the Court issued a preliminary finding that forfeiture be imposed in the amount of $847,016. That amount represents the gross receipts received by defendant's clinic, reported on her IRS form 1040 Schedule C for the years 2010 to 2013. *See Exhibit 1303*.

The Court also made a preliminary finding that restitution be imposed in the amount of $549,605.18. That figure was computed by adding the amounts paid to the clinic by insurance companies from defendant's billings for the years 2010 to 2013. It did not include insurance company payments to the clinic during times when there was no dentist in the office for the years 2008 to 2009, a sum of $46,946.21 sought by the Government.

The Court then scheduled a hearing to take testimony and argument on these amounts. That hearing was held and the Court requested further briefing that has been received.

The Government seeks forfeiture in the amount of $847,016 and restitution in the amount of $549,605.18. The defendant asks the Court to set the forfeiture amount at $126,571.62 and the restitution amount at $139,769.80.

## ANALYSIS

**Forfeiture**

In imposing a sentence on a person convicted of a health care offense, courts "shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of the offense." *See* 18 U.S.C. § 982(a)(7). In criminal cases, the government must prove by a preponderance of the evidence that property is subject to forfeiture. *See U.S. v. Garcia–Guizar,* 160 F.3d 511, 517 (9th Cir.1998).

The forfeiture process is governed by Rule 32.2 of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853. *U.S. v. Lazarenko*, 476 F.3d 642, 648 (9th Cir.2007). "Criminal forfeiture provisions operate *in personam* against the assets of the defendant and serve as part of the penalty for the defendant's conviction." *U.S. v. Nava*, 404 F.3d 1119, 1124 (9th Cir.2004). Criminal forfeiture reaches any property involved in the offense or any property traceable as proceeds to it. *Lazarenko*, 476 F.3d at 647. As to the amount of the money judgment, "[t]he statute mandates that a defendant forfeit a very specific amount—the proceeds of his criminal activity," or in other words, the amount "he received in connection with the commission of the crime." *U.S. v. Casey*, 444 F.3d 1071, 1076 (9th Cir.2006). The purpose is to "eliminate the gains realized from criminal activity." *Id.* at 1074. Generally, proceeds are limited to funds involved in the offenses of

conviction, and should not be based on uncharged or acquitted conduct. *Nava,* 404 F. 3d at 1129 n. 5. However, for offenses charging a "scheme or artifice" – as was charged here – the court may forfeit proceeds generated over the course of the entire scheme, not just by the particular executions of it charged in the counts of conviction. *U.S. v. Pena,* 2010 WL 2054442 at *3 (9th Cir. May 25, 2010) (holding that forfeiture was "not limited to amounts related to the specific checks and victims alleged in the twenty counts of conviction").

During the trial, the Government established through the testimony of several witnesses that between the years alleged in the Superseding Indictment – 2010 to 2013 – all of the defendant's billings were fraudulent. Those billings were for (1) dental services done improperly by defendant; (2) hygiene services done by the defendant and others without the proper supervision of a dentist; and (3) dental services done by contract dentists proceeding under the defendant's misrepresentation that Dr. Fricke had seen the patient and planned their treatment. During these years, Dr. Fricke was completely disabled and not coming into the office or doing any work. The defendant fraudulently misrepresented to contract dentists that Dr. Fricke had performed examinations on patients and developed patient treatment plans. Had the health care benefit plans known of this situation, they would not have paid for services rendered from 2010 to 2013.

Given that all of the services billed by defendant were fraudulent between 2010 and 2013, the entire gross receipts for those years (according to defendant's tax returns) would be derived from – and traceable to – that fraud. Hence these gross receipts would be subject to forfeiture under § 982(a)(7), quoted above. That amount is $847,016.

The defendant argues that the Government is limited to seeking forfeiture in the sum of $126,571.62 because this is the sum the Government identified during defendant's plea hearing, and is the sum she relied upon when pleading guilty. This argument requires a review of the plea hearing.

There, the Court informed the defendant about the forfeiture allegations in the Superseding Indictment and asked the Government about that forfeiture amount. The Government's counsel responded that the Superseding Indictment sought "at least $143,000" and that "it would be the Government's position that she is admitting that." *See Transcript (Dkt. No. 53)* at pp. 44-45. Government counsel then said, "that number has been amended, if you will, throughout the course of the trial," noted that a trial exhibit had a figure of $126,571.62, and offered "if it would make sense to use that number instead, I'm fine with that." *Id.*

Addressing the defendant, the Court informed her that "she is now on notice that, by having pled guilty, she is subject to forfeiture proceedings and that the Government is going to pursue the amount that you have just recited in forfeiture

proceedings *and perhaps more*, but she is on notice of *at least that amount* being claimed by the Government." *Id.* (emphasis added).

This colloquy put defendant on notice that the Government might seek, at the forthcoming hearing, more than the figure quoted by the Government's counsel. Rule 32.2(a) states that the defendant must be put on notice that the Government will seek forfeiture, although that notice need not "specify the amount of any forfeiture money judgment that the government seeks." Here, the notice was sufficient and the Court therefore rejects defendant's argument that the Government is somehow bound to a lower figure cited in the plea hearing.

The defendant argues that forfeiture must be limited by the allegations in the Indictment. Because the Indictment only focuses on defendant's conduct in providing dental services, defendant argues that forfeiture cannot include sums received for (1) services provided by licensed dentists within the scope of their licensure and (2) services provided by other licensed dental hygienists within the scope of their licensure.

That is not the law, however. For offenses charging a "scheme or artifice" – as was charged here – the court may forfeit proceeds generated over the course of the entire scheme, not just by the particular executions of it charged in the counts of conviction. *Pena, supra.* at *3 (holding that forfeiture was "not limited to

**Memorandum Decision & Order – page 6**

amounts related to the specific checks and victims alleged in the twenty counts of conviction").

The defendant argues next that the Superseding Indictment fails to allege that billing for hygiene services was fraudulent. Paragraph 18 of the Superseding Indictment alleges that the defendant rendered hygiene services when no dentist was present in the office. The Board of Dentistry had advised defendant that the law required supervision by a licensed dentist, but defendant continued to bill for her services without such supervision. Paragraph 18 alleges fraud in connection with the defendant's billing of hygiene services.

The defendant points to the next sentence in paragraph 18 stating that "[h]owever, no hygiene service billings are included in the loss amount below," and argues that this means that hygiene services were not included in the fraud allegation. The Court disagrees with that reading. The quoted phrase means that the defendant's billings for her hygiene services (when no dentist was present) were fraudulent, and that those fraudulent losses had not yet been added to the loss amount figure. Testimony at trial established beyond dispute that defendant's provision of hygiene services without the supervision of a licensed dentist was improper and that the insurance carriers would not have paid those billings for hygiene services if they had known of this. This objection is denied.

In conclusion, the Government has proven by a preponderance of the evidence that the sum of $847,016.00 was derived from, and traceable to, the defendant's health care fraud under 18 U.S.C. § 982(a)(7). Hence the Court will order that sum forfeited.

**<u>Restitution</u>**

The Mandatory Victims Restitution Act (MVRA) requires that defendants who are convicted of certain crimes like health care fraud pay restitution to their victims. *See* 18 U.S.C. § 3663A(a)(1). The "primary and overarching goal of [the MVRA] is to make victims of crime whole, to fully compensate these victims for their losses." *U.S. v. Gordon,* 393 F.3d 1044 (9th Cir. 2004). Congress has declared that restitution must be ordered without consideration of the economic circumstances of the defendant. *See* 18 U.S.C. § 3664(f)(1)(A). The Government has the burden of establishing by a preponderance of the evidence that the victim's damages were caused by the conduct of which the defendant was convicted. *U.S. v. Rice*, 38 F.3d 1536, 1540 (9th Cir. 1994).

As discussed above, the Government has shown by a preponderance of the evidence that the entirety of billings from 2010 to 2013 were fraudulent. Proof has established that health care insurers, including Medicaid, paid billings submitted by defendant in the sum of $549,605.18. During trial, insurance company

representatives testified that they would not have paid these billings had they known of the fraud.[1]

The defendant argues that imposing restitution on top of forfeiture constitutes an impermissible double penalty. The Court disagrees. The Ninth Circuit has held that

> [t]he two payments represent different types of funds: punitive and compensatory. They are different in nature, kind, and purpose. Money levied as a punitive fine does not "double" the money intended to compensate a loss anymore than the addition of apples to one's store doubles the orange stock. Nor is the collection of forfeiture and restitution based on the same crime an impermissible doubling insofar as a defendant is concerned.

*U.S. v. Davis,* 706 F.3d 1081, 1084 (9th Cir. 2013). Thus, restitution may be imposed along with forfeiture.

The defendant argues that the restitution amount improperly includes sums that go beyond the allegations of the Superseding Indictment. Under the MVRA, "restitution may be ordered for all persons directly harmed by the entire scheme" and "is thus not confined to harm caused by the particular offenses for which [the defendant] was convicted." *U.S. v. Johnson*, 2017 WL 4018078 at *3 (9th Cir. April 21, 2017).

---

[1] The Court will reject the Government's attempt to add $46,946.21 to this figure. That sum has not been proven to the Court's satisfaction.

The Court is concerned, however, with one aspect of the Government's request for restitution. Testimony by F.B.I. agent Jill Stenger, who was the investigating agent on the case, established that $265,316.18 of the total $549,605.18 represents work done by licensed contract dentists. The Government seeks this sum in restitution because the contract dentists were misled by the defendant into believing that Dr. Fricke had examined the patient and approved a treatment plan. While that is part of the fraud in this case, the patient ultimately received treatment by a licensed dentist, and the billings accurately reflected the treatment that was received. Significantly, the reimbursement would be to the insurers, rather than the patients. And reimbursing insurers for paying for treatment by a licensed dentist would be a windfall to insurers, and would not be consistent with the MVRA's goal of making victims whole. Accordingly, the Court will reduce the restitution amount by $265,316.18. Under the same analysis, the billings for hygiene services performed by licensed hygienists – in the sum of $144,519.20 – should also be backed out of the restitution amount. While that again was part of the fraud because the licensed hygienists were not being supervised by Dr. Fricke as represented, the patients nevertheless received the services they paid for, and it would be a windfall to the insurance companies to receive these sums.

When those sums are subtracted, the Court is left with a restitution amount of $139,769.80, representing the dental services work done by the defendant and improperly billed to the insurance companies. This is the amount the Court will order as restitution.

**Substitute Assets**

The defendant argues that her family residence – assessed at about $100,000 – should not be used as a substitute asset under the forfeiture laws. The substitute assets statute is set forth at 21 U.S.C. § 853(p). Under that statute, there is no requirement that there be a nexus between the home and the crime. *U.S. v. Bajakajian*, 524 U.S. 321, 333 n. 8 (1998). The defendant is essentially arguing that the use of her family home as a substitute asset is an excessive punishment in violation of the Fifth Amendment. The test for whether a punishment is constitutionally excessive turns on proportionality: "The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Id.* at 334. Here, the money judgment against the defendant is proportional with the amount of money she fraudulently obtained. If those funds are unavailable, the government can rightly use § 853(p) to forfeit substitute assets – and in this case, a substitute asset that is worth a great deal less than the original

judgment. Thus, the forfeiture of the family home is proportional with the offense and does not constitute an excessive punishment.[2]

**Conclusion**

For the reasons set forth above, the Court will grant the Government's motion for forfeiture (docket no. 63) and impose forfeiture in the sum of $847,016.00. The Court will grant in part the Government's request for restitution, and impose restitution in the sum of $139,769.80.

The Court will issue a preliminary order of forfeiture pursuant to Rule 32.2(b)(4)(A) that is final as to the defendant. Pursuant to Rule 32.2(b)(4)(B), the Court will order that the Judgment be amended to include the forfeiture and restitution amounts.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for forfeiture (docket no. 63) is GRANTED, and that a preliminary order of forfeiture final as to the defendant be issued pursuant to Rule 32.2(b)(4)(A) in the sum of $847,016.00.

---

[2] In a similar case, the Ninth Circuit has held that a family home may be used as a substitute asset in a health care fraud case, but the decision has no precedential value under the Ninth Circuit Appellate Rules because it was issued prior to 2007. *See U.S. v Shepherd,* 2006 WL 701150 (9th Cir. March 17, 2006).

IT IS FURTHER ORDERED, that restitution be imposed on the defendant in the sum of $139,769.80.

IT IS FURTHER ORDERED, that the Judgment (docket no. 79) and Statement of Reasons (docket no. 78) be AMENDED to reflect the forfeiture and restitution amounts set forth above.

DATED: October 27, 2017

B. Lynn Winmill
Chief Judge
United States District Court